The next case called Oral Argument is Jett v. Columbia Casualty Co. Whenever you're ready, please proceed. May it please the Court, my name is Lisa Wilson, and I represent the appellant's Columbia Casualty Company in this matter. This is an insurance coverage case, and it involves two very distinct coverage parts. There is a general liability coverage part, which affords coverage relevant to this matter, claims for property damage that are caused by an occurrence. And it also contains a professional liability coverage part, which provides coverage for professional liability claims on the claims made and reported basis. As the appellee, Everett Jett, has seemingly abandoned his arguments under the poverty damage occurrence-based coverage part, we would like to direct the Court's attention and use our time to discuss the professional liability coverage part. And as to the professional liability coverage issues, we are here today on behalf of Columbia Casualty Company to defend this Honorable Court's decision in Brahman v. Continental Casualty Company. Brahman holds that the time qualifications in a claims-made-and-reported policy are an element of coverage. And so to trigger the duty to defend in a claims-made-and-reported policy, the claim must be made during the policy period, and it must be reported during the policy period. It's not the act, error, or omission that triggers the duty to defend. And Brahman's not the only case that says that. There are numerous Illinois decisions. The Cuda case. There is the All-Seal case. There is the Geisler case. There is the Baker-McKenzie case. And even the UCAN decision that Jett relies upon in its estoppel argument all hold the same thing. The trigger of coverage in a claims-made policy is determined by when the claim is made and when it is reported. And this is really important because when you do get to that estoppel argument, there are prerequisites before you find estoppel. There has to be a duty to defend first. There has to be a breach of the duty to defend first. And the only way to evaluate that duty to defend, the only way to evaluate whether there is a breach, is by reference to the time qualifications in the claims-made-and-reported policy. And as we sit here today, one question we should have is, whose burden is it to show that that claim was timely made and reported? Under Illinois precedent, Illinois Supreme Court law, the Addison case, the St. Michael's Orthodox Church case, they say that the burden of proving coverage in the first instance is on the insured. So, if we were talking about a current case... The burden of proof on the... I'm sorry, I didn't mean to say proof. Burden of establishing coverage in the first instance. Well, coverage is established. There's no issue as to coverage during a certain time variance. There is an issue as to coverage because the coverage is tied to the time qualification. That's what I just said. The time, as to the dates that are listed in the policy, there's no issue that there was coverage, right? Well, I think we may be talking about different... Okay, correct me if I'm wrong. Let me... There's a question as to the duty to defend. Okay, I'm not there yet. Okay. I'm equating that with the issue of coverage. Coverage is tied, in this case, it relates to whether there's a defense obligation under... First, you have to have coverage, right? No, they're the same. The coverage is... The coverage that we're providing... So, the word coverage, you're equating with the duty to defend. Yes. Okay. So, to show to the burden of establishing coverage, what I mean by that, and I think it's easier sometimes to see it in the form of an occurrence policy, which covers property damage or bodily injury. The insurer has the burden of establishing, if there's a lawsuit filed, that that lawsuit presents a potential for coverage. It presents a potential that there is a claim of property damage caused by an occurrence. So, in a claims-made policy, it's the insurer's burden to show that the claim was highly made and reported. And I think the disconnect here is the reality is that in most lawsuits, claimants don't identify when they make a claim, and they don't identify when they report a claim. And Mr. Jeff's position is that, well, if it's silent, then, you know, the tie goes to the runner. But he then prevails on whether there's a duty to defend, and that's not how it works. In every decision that you'll read in Illinois, whether it's your own decision, a grommet, or whether it is even the U.K. decision that he relies upon, all courts look to see when the claim was made and when it was reported to determine if there's a duty to defend under a claims-made policy. So, that is integral to the duty to defend. And I'd like to talk about this issue of estoppel. In the Elko decision, which, as your honors know, is the Illinois Supreme Court decision regarding estoppel, even in that case, which, incidentally, doesn't even mention the grommet case, so it doesn't expressly overrule grommet by any means, in the Elko case, which had an occurrence-based policy, the potential for coverage was shown because there was a complaint that alleged poverty damage. And that was sufficient, then, to then trigger the duty to defend. Elko stands for the proposition that, once the duty to defend is established through that potential for coverage, we as an insurance carrier can't use late notice as an excuse to then excuse our breach of the duty to defend. But you've got to find the prerequisite first. You've got to find the duty to defend. And even in the Yukon decision, the court found there was a duty because there was a claim that was both made and reported in the second policy period. So, you know, the initial burden, even in that case, the insurer demonstrated. And that's what's lacking here. And that's what makes this case like grommet. Because in grommet, the policy expired two or three years before the claim was actually made. And that's exactly what happened in this case. How do you address the issue that says a duty to defend is based upon the allegations of the complaint and whether or not the coverage provisions of the policy in relationship to the allegations factually make it a submissible complaint? How do you respond to that? I think that's a great question, Your Honor. And I think in an occurrence policy, when you're looking for property damage or looking for bodily injury, it's a lot easier to find that in a complaint to trigger coverage. But in a claims-made policy, it's often lacking those essential facts. Okay, but the courts don't distinguish, do they, between a claims-made policy? Absolutely. The issue is duty to defend, right? Right. And the law in this state says that you look to the complaint and the factual allegations of the complaint and that they're to be liberally construed. So how do you respond to that? My response is that the duty to defend is tied to facts. They're tied to facts that are alleged in the complaint, not alleged, not implied facts, but facts. So you agree. No, I agree with the standard. But if the fact of when the complaint was made reported is not in that complaint, then the complaint is not triggering coverage. Then you have an obligation, don't you, to ask for a bill of particulars or file a motion to dismiss, a 619, saying that there's an affirmative matter that precludes coverage? No, we don't. Because the complaint itself has to create that potential for coverage in the first place. It's then incumbent. So what I'm trying to say. But I understand what you're trying to say. You're trying to say that if they don't make the allegation within the period of coverage, you don't have to defend. No, that's only part of the equation. What happens in reality, and what should have happened in this case, is it's incumbent upon the insured to give us the notice, to give us the document that shows that the claim was made and was reported to us. What case stands for that proposition at the pleading stage? The Rahman, your case. Rahman at the pleading stage. That's right. Rahman says the potential for coverage is not determined by the fact that somebody alleges an act of professional negligence in a complaint. That's not the trigger. It's the claim made and reported. And so Rahman talks about this as a potential of coverage. So it's your decision that I think best supports what I'm saying today. What I'm saying is nothing precludes the insured from providing that document. The insured is the best person to know when the claim is made and reported. It's a requirement in the policy that the insured report. So there isn't – The reporting is a defense. Their failure to report is your defense. No, according to Rahman, it's not a defense. It's part of it. The time qualification is an element. To establish coverage in the first place, and by that I mean the duty to defend, so we're not mixing up principles. For this insured to trigger a duty to defend, they must report the claim timely. It is not a defense. It is an element of the coverage. And that is expressly stated so in Rahman. None of the, you know, even in all of the decisions, well, there's really only one decision, the UCAN decision, that deals with estoppel in a claims made at the first district case. But in that case, the claim was made and reported during the second policy period. So that prerequisite was established. And then there's another argument I'd like to address that Jet makes as well in his brief, which is that a circumstance somehow triggers a duty to defend under the policy. The circumstance, distilled to its most simplistic terms, is a potential claim. It's like a claim, which a claim is defined in the policy to mean a lawsuit or a demand. Either way, they have to be reported during the policy period. The complaint that Mr. Jet filed against our insured Morningstar was not a circumstance. It was a claim. It was by definition a claim because a claim means a lawsuit. So under the policy, that claim had to be first made and reported during the policy period in order to trigger a duty to defend. The other reason that estoppel does not apply here is simply the policy had expired long before the claim was ever made. And I don't believe there's any question. I don't believe that's even in dispute. The claim was first made two years after the policy had expired. And in the Born v. Seale case, for example, the insurance period there was not estoppel denying coverage in an occurrence policy that had expired before the triggering event for coverage in that matter. So, you know, one of the exceptions to estoppel, again, is not just that where there's no potential for coverage, as there is not in this case, but it's also where there's not even a policy in existence, and our policy was not in existence at the time. The claimant in Grauman also attempted to make an estoppel argument, and it was rejected for the very reasons I'm providing to this Court today. You agree, though, that if, I mean, an insurance company is put in a tough spot, if you don't undertake a duty to defend and you're wrong, then the law stops you from making claims for defenses you could have made had you come in and done that. That's true, Your Honor. I agree with that. So if this Court finds that you did have a duty to defend, then you're not going to be able to raise those defenses that you could have raised. I mean, it's a really tough spot for an insurance company to be in, such as yourself. Yes. Or your client. Yes, but... So you agree with that portion of the law? I do. I do, Your Honor. I just, where I disagree is whether the defense was triggered in the first instance. I understand. Now, Judge Matossian, I think it was, Judge Matossian gave no explanation in his order. No. Was there any discussion by him before he... I was not the attorney that argued the motion, but my, the best hearsay I have is that there was not, there was oral argument is my understanding, but I'm not, I don't believe... You haven't read the, is it in the record? The... The oral argument. There was no record. That's what I... Yeah. I just wanted to make sure. Yeah, there was, there was no... So there's no oral, there's nothing in the record that's going to allow us to understand what Judge Matossian's thinking was at the time. No. And I still have some time left. With respect to, so there's two issues. I mean, we've got the PL coverage part, which I think really we can all agree is the heart of this appellate dispute. But the judge did rule that there was a potential claim for property damage, and we briefed that issue. There was no rebuttal to it. In Mr. Jett's response brief, you know, this is a theft case. Someone stole money from a patient, and I think it's, the case law is quite clear that this stealing of money is not a claim of property damage. So... Well, you have a clause that's pretty broad in your policy. Which one is it? Under the property damage. I mean, it's, it's pretty, pretty broad. In fact, I wasn't quite sure how much it did cover. It's a loss of use of tangible property that is not physically injured. What is that? Money? Why can't that be money? Because we're not talking about the loss of use of money. We're talking about the loss of money. Well, if a person has something stolen from them, money is tangible. And if they can't use it anymore, it's theft. So in 21B, I was thinking to myself as I read this, that's pretty broad. That is a pretty standard definition of property damage, and the case law... So is there any case law that says money does not equal loss of use of tangible... There is, Your Honor. That is not physically injured. Yes. Yes, Your Honor. There are a number of, there are some Illinois cases that hold that the theft of something is not the loss of use of that. But, and there's... I'm talking about this particular clause. Yes. Same clause. Same clause. Same clause. Can you give me a case so that I can... I can give you, yes, I can give you a number of cases. There is the Artisan and Truckers Casualty Company versus Hanover case. Just give me the site if you would. Sorry, okay. 126 F Sub 3rd 998. Is that an Illinois case? It's an Illinois case, yes, in 2015. So it's 126 F Sub 3rd? Yes. And what's the page? Oh, I apologize. I don't have a specific page site, but that is a case that dealt with... Have you briefed it? It is. It's in the brief, yes, Your Honor. It's in the opening brief. Okay. There were two backhoes that were stolen off the truck, and the insured made the argument, well, the backhoes were stolen, so there's a loss of use of backhoes. And the court says, no, that's not what loss of use means. That's what the argument the insured is making is a loss of the backhoes, not a loss of use. Loss of use connotes a temporary loss as opposed to loss of some property, which refers to a permanent loss. So what we're talking about here is a permanent deprivation of the money, not a temporary... Not if there's restitution, for example. Well, that's the... Then it's temporary. Well... Right? I mean, if you get back... It's not. No, I don't think so. I think it... So there's no case that really talks about money. You're talking about a backhoe... There's a California case. I'm sorry? There's a case outside of Illinois, a California case called Advanced Network v. Peerless. It deals with the loss of money, money stolen from an ATM by an employee of one of those companies that stocks the ATMs. And the court held consistent with the Illinois court, loss of use of property is different from loss of property. They're not interchangeable in insurance. And it makes the same distinction that that Arson case does. I think there might be another Illinois matter as well, and it's briefed in my opening brief. Okay. Thank you. Thank you, counsel. Counsel? Please, the court, counsel. My name is Mike Badesky. I represent the Epoly Everett Jett in this case. The facts are very straightforward and the court's aware of them. Everett needed some help with his parents. They were getting on in years. There was some dementia, among other health issues, so we signed a contract with Morningstar Home Health Care. Morningstar was supposed to have people come in to help with medications and cooking and bathing and so forth. Unfortunately, a Morningstar employee, Kayla Mueller, ended up stealing over $228,000 from Helen and Adolph, the parents of Everett. As alleged in the complaint, these thefts occurred between February of 2009 and August of 2010. Columbia Casualty insured Morningstar under actually three policies, September 08 through September 09, September 09 through September 10, and then September 10 through September 11. So, again, as far as the factual backdrop goes, there was insurance in place covering Morningstar both during the time of the thefts and for a period of time a year after. So that's the actual background. The complaint, when it was filed, alleged breach of contract as well as negligent supervision on the part of Morningstar. Columbia Casualty provided professional liability coverage along with some other coverages, which offered coverage for a claim or a circumstance in rendering professional services. Professional services included furnishing food, beverage, or medications. So, basically, what was alleged in the jet lawsuit was that Kayla Mueller, her theft was a circumstance. Again, looking at the policy and the professional liability coverage, the theft was a circumstance that could generate a claim. As a result of Morningstar's negligent supervision, that resulted in the loss of money, resulted in a circumstance. What about her claims made issue? What is your response to her argument that the claim was not made during the policy period? How do you get around her argument? Here's where I'm going, Judge. By the way, just so you know, this is a duty to defend case. Now, she mentioned that, but the argument that was made was really a duty to indemnify. Two separate duties an insurance company owes under a liability policy. Duty to defend, duty to indemnify. When there's uncertainty in a complaint, like we have here, there is nothing in the complaint as to when the claim was made or when the company was notified. If you compare the complaint to the policy, the complaint does not say when a claim was made. It's open. It's unknown. And she's saying that you have to do that under a Fifth District case. Right. Can you distinguish that case? Yes. In all due respect to this Court, that case was decided back in 1980. And it's our position that it's actually been held by the Eulich case. That case is no longer good law. It's no longer good law because this Court relied upon the notice. It was, again, a claims-made policy. But the Court talked about the insurer giving notification and that the company could deny coverage and didn't deny coverage because it wasn't given notice to the claim. Now, what happened was… Isn't that what we have here? I'm sorry, what, Ron? Isn't that what we have here? Isn't that her argument? Oh, yes. Yes. But here's what happened. After 1980, Employers Insurance v. Elko Limiting Trust came out. This is an Illinois Supreme Court case. It came out in 1999. And the Illinois Supreme Court considered late notice, what impact it would have on a duty to defend. And this is the Illinois Supreme Court. It says, This is the Illinois Supreme Court in 1999. Now, this was followed up with a claims-made case, this Eulich v. National Union, in the Citus 340 Illinois Decisions, 880 Northeastern, 929 Northeastern 2nd and 531. This was a claims-made case. Again, notice was an issue. You know, when was the company notified? And basically, this Eulich case says that this earlier 1980 case is no longer good law. So we have this. Oh, yeah, it says, So, again, all due respect to the Court, this Grannon case that she's relying upon came down in 1980. We have a subsequent Illinois Supreme Court case in 1999. A case, what I believe is directly on point here, Eulich v. National Union. Again, claims-made policy, same issues. This case says, you know, Grannon's basically no longer good law because of the broad decision issued by the Illinois Supreme Court. Again, the defendant, National Union, tried to argue, well, hey, you know, ELCO, this was a occurrence-based policy that has no application to a claims-made policy. Again, this appellate court and Eulich disagree. Defendants argue the holding in ELCO applies only to occurrence-based policies, and therefore we should not hold that claims-made and reported policies are subject to judicial estoppel. There is nothing in ELCO limiting the estoppel doctrine to occurrence-based policies. Indeed, ELCO noted that, to the extent decisions regarding the exception of the estoppel doctrine for late notice offenses conflict with our holding, they are hereby overruled. Again, that's quoting the Illinois Supreme Court. And I apologize for reading to the court. I know that's not really favored, but I wanted to address that, address the question. So what we come down to, Your Honors, is this. We have a situation where the lawsuit comes in to Columbia Cabinet. It doesn't say, it doesn't, there's no facts in the lawsuit. You know, what is the claim-made policy of the company notified? And we have allegations of negligent supervision during a period of time when there was a policy in effect, and again, the other policy is in effect after that point in time. So what is, what is the question? The question is, is there the potential for coverage? Yes or no. Is it potential coverage? What counsel's arguing is really a duty-to-identify issue. Well, you've got to do this, you've got to do that, you've got to give us notice, you've got to make a claim, otherwise there's no coverage at all. What she's arguing is it's either 100% covered or it's 0% covered. But there are cases, and there's many cases from this court and Illinois Supreme Court that say, well, look, an insurance company may have a duty to defend, but they may not have a duty to indemnify, because the duty to defend is much broader than the duty to indemnify. The question is, when there is nothing in that complaint about the claim being made or when notice is given, how is that to be interpreted by the court? Again, the question is mere potential. Is there a potential for coverage? And again, I don't mean to read a whole bunch to this court, but again, we've got a number of Illinois Supreme Court cases. A refusal to defend is unjustified unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. Unless the complaint on its face clearly alleges facts which in true would exclude coverage, the potential for coverage is present and the insurer has a duty to defend. So we've got outlawed marine, that's the Illinois Supreme Court. This court quoted that in Bounty Owned Realty versus Cincinnati Insurance. There is no case that counsel cited for the defendant here that says this law doesn't apply to claims made policies. This law applies to claims made occurrence-based policies. It applies throughout no matter what kind of liability coverage we're talking about in the state of Illinois. So what's the application here? Well, the application is, again, when we don't know, doubts and ambiguities are construed in favor of the insurer. Now how does this work in practicality? Well, I cited a couple of different cases. Clemens versus Travelers, that's an Illinois Supreme Court case. The issue there was permissive use. Travelers denied coverage to a driver of a van because they believe he did not have permission to use the van. The complaint was silent on whether there was permissive use of this van. There was a police report from the accident. Basically, they got a statement from the driver saying he did not have the owner's permission to drive. The Illinois Supreme Court said the police report was not enough to dispel potential coverage for the driver. Again, the Supreme Court looked at the complaint, looked at the policy, and they said, well, it's silent about permissive use. There's a potential for coverage. A duty to defend is owed in that situation. I mentioned another case, and I think it's very interesting, frankly, and it's Chandler versus Doherty. Because in this case, everybody knew that the vehicle that the insured was driving was not covered. It was undisputed this vehicle was not covered. This person, Doherty, was insured. He insured his Chevy Celebrity with American Fire. Later on, he got this vehicle. It was an old Volkswagen. He modified it. He made a bunch of changes to it. He called it his replica. American Fire would not insure that vehicle. It only insured the Chevy Celebrity. And the policy said, basically, that only the Chevy is going to be covered. Other vehicles are going to be excluded. That's what the policy said. So, sure enough, Mr. Doherty gets involved in a motor vehicle accident with Chandler. He's driving the replica. But the complaint that Chandler filed later on just said that Doherty was driving his motor vehicle. It didn't say the Chevy. It didn't say the replica. It just said his motor vehicle. Well, again, the police report was undisputed. So, look, he's driving this replica. Chandler knew he was driving the replica. Doherty knew he was driving the replica. And the policy said there's no coverage for the replica because, again, the only coverage was the Chevy Celebrity. So, American Fire, after Doherty gets sued, American Fire doesn't defend. They don't defend because everybody knows he's not driving an insured vehicle. There's no question. There's no coverage. Well, there's a default judgment entered. The case goes up on appeal. The 4th District Appellate Court said, sure enough, there's a duty to defend. They said there was a duty to defend because the term his motor vehicle could potentially relate to the Chevy Celebrity. Again, they looked at the complaint. They looked at the policy. It was unclear in the complaint which vehicle the insurer was driving. And American Fire argument, I feel, said, you know, wait a minute here. There's no dispute. I mean, this vehicle is not covered. Well, what did the appellate court say? What this court, frankly, what Columbia should have done, American Fire should have filed a declaratory judgment action. There was the potential for coverage because, again, it was unclear in the underlying complaint which vehicle the insurer was driving. And they said, you know, they may have certainly won the declaratory judgment. There wouldn't be any coverage. They wouldn't have to pay a judgment against their insurer. But they did not do so. They just denied coverage, refused to defend their insurer. That's what Columbia was supposed to do here. They didn't file any declaratory judgment. They should have filed a DAC, and they didn't. They say, well, you know, we've got our evidences undisputed. Hey, you know, we didn't get notice. The claim wasn't made. They had this information, but they didn't file a declaratory judgment action. They could have easily done that. They did not do so, and that's why they were stopped from denying coverage because the complaint is unclear when the claim was made, when the notice was given. So what relief are you asking for from this court? I'm just asking the court to affirm the summary judgment in favor of the plaintiffs here, finding that there was potential coverage under the policy. Well, are you asking us to find a duty to defend? Yes. Because do you think that we can find, as you refer to it, potential coverage? Yes, absolutely. Do you think we can make that finding a fact when the court has not made that? Well, our summary judgment… The court's order says the February 5, 2016, order granting summary judgment on count one of plaintiff's complaint is final as to the issues of coverage and estoppel from raising any policy defense. Right. So if we find a duty to defend, do you think that we can also find that the company is estopped from raising any defenses that it could have raised? Yeah, that's by nature of it, yes. Because if they had a duty to defend under Supreme Court cases, they had a duty to either file a declaratory judgment or defend under a reservation of rights. Okay, but I'm trying to find out what you want this… What remedies are you asking for from this court? I'm just asking this court to affirm the trial court's order. It granted summary judgment on the coverage issue to my client. And the coverage issue that we decided was there was coverage under the policy. If there was a duty to defend, potential coverage under the policy… Well, coverage and potential coverage to me are different. Potential coverage means they can still litigate. Coverage and estoppel means something very different. Okay. If there is a potential coverage, if there's potential coverage, they have a duty to defend. If they think there's an exclusion, if they think there shouldn't be coverage or they don't feel it's covered, they have to file a DAC or they have to defend under a reservation of rights. They can't just say to the insured, sorry, we're not going to defend you. Good luck and goodbye. So by operation of law, if there is potential coverage and they don't defend, I mean they didn't defend them. They didn't defend Morningstar, we know that. That means that they would be estopped to raise coverage offenses later. Because, again, the whole point of this exercise is if they have information that they think is excluded, excludes coverage or prevents coverage, it's not even a complaint. If they want to bring that stuff forward… I understand what you're saying. What I'm asking for, Judge Matossian gave us a two-line, three-line order that just says plaintiff's motion for partial summary judgment is granted, defendant's motion for partial summary judgment is denied. And the only real fleshing out of that that we have is the, I guess, defendant's motion for findings. And he only says what I said before, that the count one of plaintiff's complaint is finalized to the issue of coverage and estoppel from raising any policy defenses. So, I guess we're going to have to go look at what your motion for summary judgment said and what her motion for summary judgment said and figure that out. I apologize for that, Judge. Well, I'm just saying, I mean, I'm trying to figure out what remedies. I mean, we can, I guess, do what Chandler does and say that there was a duty to defend and they didn't do it and so they're estopped. That's one option, right? Yeah, I think that's what I would ask for. I mean, that really is what you're asking for. Yes, Your Honor, yes. Which is very different from what she's asking for. Well, you're correct. But that's what I'm trying to get from you is what relief, because it's easy to say affirm or reverse, but we usually do a little more than that. So, are you asking for the same relief as in Chandler? Yeah, I mean, I'm asking for the relief that this court found they had a duty to defend, they breached a duty to defend, and they're estopped from raising any policy defenses. Okay, that's what I was looking for. So, what I was trying to get to in terms of mentioning these cases earlier is basically the lesson of this. If there's uncertainty in a complaint, the uncertainty is resolved in the insurer's favor. Again, because the duty to defend is so much broader than the duty to indemnify. Again, they mentioned in the brief quite a bit, there's a lot of citation to it. Well, we've got this information that, hey, it's not covered. We don't have a duty here. They need to file a timely declaratory judgment action. Okay, that's what they needed to do, or defend under a reservation of rights. Then they can bring that stuff forward, because that was the same situation that came up in this Chandler v. Gordon case. Again, there was information outside the complaint, undisputed information, that the insurer was not driving a covered vehicle. I mean, nobody disputed that. But the insurance company just refused to defend. They didn't file a declarative defendant under reservation. They were stopped from trying to bring up that argument later on. And that's the same result should happen here. The one thing I do want to mention, this was relied on quite a bit in the briefs, and this is Pekin v. Wilson. In my judgment, this was misquoted, frankly, by Columbia to reach the result that they want to reach. Pekin v. Wilson is an example. It's an Illinois Supreme Court case, an example of an insurance company actually doing what they're supposed to do. This was an intentional injury type case where the insurer got into a fight with somebody else. There's a couple different incidences. And the insurer gets sued. So Pekin right away files a declaratory judgment action. And the court said, well, look, when you look to the pleadings, and sure enough, in the underlying injury case, the insurer filed a counterclaim alleging self-defense. And that's fine. What Columbia is trying to do here is say, well, look, you know, Pekin is a practical matter. You know, we've got this evidence here. It's all this undisputed evidence. We don't have to file any declaratory judgment action. We can just bring this up now. Estoppel, you know, that rule, it doesn't apply to us because we have this undisputed evidence, and we can just raise this stuff any time we want to. We don't have to file a DAC in the beginning of this. That's basically where they're going with this. Pekin, and I respect it as a significant Supreme Court case, but really it didn't exactly break new ground like Columbia is trying to argue it did. Because, again, Pekin versus Wilson, the Supreme Court relied on two appellate cases. In both of those cases, when the insurer got sued, the insurance carriers filed declaratory judgments right away. When the insurance company files a declaratory judgment timely, they can bring in all the evidence they want to say there's no duty to defend. They can take depositions. They can get discovery. They can bring in documents. They can do whatever they want because Estoppel doesn't apply when the carrier files a timely declaratory judgment action. That's the lesson of Pekin versus Wilson, okay? Pekin, this case did not hold that, did not abolish the requirement to file a DAC action, and it didn't abolish the Estoppel Doctrine at all. But that's basically what Columbia is trying to do here. Columbia is trying to argue that, well, hey, you know, Pekin, all right. Under Pekin, they can just bring up this evidence any time they want to, but that would really put an end to the Estoppel Doctrine. Thank you. Thank you, Counsel. Counsel? The standard for the duty to defend is not based on a blank complaint. It's not based on the absence of factual allegations. What are the factual allegations in this complaint that trigger the duty to defend? It can't be the professional negligent act because Brahman says that in every claims made in the court, and he says that in order to distinguish claims made in the court of policies from occurrence-based policies. So what is it then that triggers this duty to defend if there's nothing in that complaint? It's got to be something, and there are numerous Illinois decisions. How do you deal with Chandler? Chandler is clearly a different automobile, and even there the court said there's a duty to defend. I mean, Chandler is at the extreme. Chandler is a situation where the insurance company was trying to apply an exclusion. The potential for coverage, the duty to defend in the first instance, was established by that insured by the fact that he was driving a motor vehicle accident. But he didn't say which one. The policy only required that as an exclusion. Because remember the way insurance works. You've got to find the coverage, and then the insurance company tries to exclude the coverage. The insured has the initial burden of proving the coverage before you get to that exclusion. So they did that. That insured did that and found that there was a potential for coverage. And it wasn't tied. There were flaps in that complaint. The fact was he was driving an automobile, and it was an accident. And in Illinois for an automobile liability insurance policy, that apparently is sufficient to raise the potential for coverage. Again, not the same test that would be for a claims made. Then the insurance company wanted to rely on the exclusion, and that's why the court said, no, no, no, you've already breached your duty to defend by not defending and filing the declaratory judgment action. But you've got to do that. Why didn't Columbia file a DAC action? We didn't feel that we needed to. Why not? Well, Grumman, for example, was a case. Well, he says that employers' insurance, the Elko case, let's call it, overruled Grumman or said Grumman wasn't good law from 1980 to 1999. I urge you to take a look at Elko, because what you're not going to see in that case is any reference to Grumman. The fact that in Clemens, which is- It doesn't matter. The question is, do you believe that the Elko case is contrary to our decision in Grumman? No, I don't, Your Honor. Okay. So my question, though, is, if you take such a chance, why not take the safety net and file a DAC action or defend under a reservation of rights? I mean, is that just a business decision? We really didn't feel that we needed to, Your Honor, because the law was very clear that a claim has to be made and reported during the policy period. Well, how do you prove that a claim is not made within the policy period? How do I prove that? Yeah. Well, it's not my burden to prove that. No, but how- But- If they don't allege it, how do you respond? A claim is made at the time a demand is made. I understand that. My question is, if it's not in the complaint, what do you do? File a motion for partial or summary judgment? Yes, Your Honor. Okay. In the ensuing declaratory, yes, we can file a motion for summary judgment. Which you did here. Yes. Okay. And in that partial summary judgment, that's when you raise the fact that it wasn't made in the claims period. Yes. You want to use extrinsic evidence to prove that. But we also relied on that in our initial denial as well. Well, your initial denial was made how? Once the claim was made to us, which was after the policy had long expired. I'm talking about the complaint. Okay. The pleadings. I want to talk about the pleadings. A complaint is filed. Your company looks at it and says, well, no claim was made in the appropriate claims period. That's at least one issue that you look at. Right. What's your response? We would look at the complaint and see when the complaint was sought. I know. But did you file a 2-619? How did you respond? Oh, in this particular case.